UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CYMULATE INC., BRIAN STONE, and EYAL WACHSMAN,<br><br>*Plaintiffs,*<br><br>v.<br><br>RYAN HARDY,<br><br>*Defendant.* | § § § § § § § § § § § § | CIVIL ACTION NO. 1:21-cv-00216-UNA |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, and for the reasons set forth herein, Plaintiff Cymulate Inc. ("Cymulate"), Plaintiff Brian Stone, and Plaintiff Eyal Wachsman (collectively "Plaintiffs"), by and through their attorneys, respectfully submit their Memorandum in Support of Their Motion for Temporary Restraining Order and Preliminary Injunction against Defendant Ryan Hardy ("Defendant" or "Hardy").

### I.  PRELIMINARY STATEMENT

Plaintiffs bring this action for injunctive relief against Defendant for unjustifiably seeking to file claims in a South Carolina court that are subject to a valid and binding arbitration clause that requires the parties to arbitrate covered claims in Delaware. Defendant is engaged in a scheme to strongarm Plaintiffs into a settlement by filing an action in state court, that is clearly subject to an arbitration clause, and threatening to conduct discovery, including harassing third-party discovery, immediately. Accordingly, Plaintiffs asserted claims in their Complaint seeking declaratory judgments that the arbitration clause is enforceable and any and all claims against Plaintiffs are subject to the arbitration clause. Defendant's threats to ignore the benefit of the

1

parties' bargain and file covered claims in South Carolina state court are now imminent.

Absent preliminary injunctive relief, Plaintiffs will suffer irreparable harm through Defendant conducting discovery immediately, including intentionally harassing third-party discovery, by way of loss reputation and loss of goodwill, the cost of objecting to such discovery, and the cost and inconvenience in achieving the inevitable, compelling arbitration of any and all claims against Plaintiffs. All of these losses cannot be easily quantified with any degree of certainty.

## II.  FACTS

Plaintiff Cymulate is a cyber security company which provides its clients with a breach and attack simulation platform to protect organizations from cyberattacks. Complaint ¶ 3; See also Declaration of Eyal Wachsman ("Decl.") at ¶ 3. Cymulate is a Delaware corporation with its principal place of business in Dallas, Texas. *Id.* Cymulate's parent company, Cymulate Ltd., is headquartered in Israel. *Id.* Plaintiff Stone is employed by Cymulate as the company's Chief Revenue Officer ("CRO") and is based out of Cyumlate's headquarters in Dallas, Texas. Complaint ¶ 4; Decl. at ¶ 4. Plaintiff Wachsman is the co-founder and Chief Executive Officer of Cymulate and is based in Israel. Complaint ¶ 5; Decl. at ¶ 2.

Hardy entered into the agreement attached as **Exhibit A** ("Employment Agreement"), accepting employment with Cymulate as a Sales Director, beginning on or about June 15, 2020. Complaint ¶ 11; Decl. at ¶¶ 5, 7. Hardy and Cymulate also entered into a Non-Disclosure and Non-Competition Agreement ("NDA") attached as Schedule A to the Employment Agreement. Complaint ¶ 11; Decl. at ¶ 7. Hardy executed the Employment Agreement and NDA on June 7, 2020. Complaint ¶ 12; Decl. at ¶ 8. Hardy was employed by Cymulate under the terms of the Employment Agreement until his employment was terminated. Complaint ¶ 13; Decl. at ¶ 9.

Throughout most of his employment with Cymulate, Hardy reported directly to Stone. Complaint ¶ 6; Decl. at ¶ 5.

> Under the Employment Agreement, Hardy agreed
>
> In the event of a dispute between you and the Company arising out of or related to your employment with the Company . . . you and the Company agree to settle such disputes by means of arbitration administered under the Federal Arbitration Act by the American Arbitration Association ("AAA") in the State of Delaware . . . . This requirement to arbitrate disputes means that you and the Company specifically waive any right either party may have to a trial by jury in a court of law, and **applies to all claims and demands** . . . including, without limitation, any rights you may assert under any federal, state, or local laws and regulations **applicable to your employment with the Company**.

Exhibit A at 3 (emphasis added). In addition, the NDA provides that it is to be governed by Delaware law and that any dispute regarding the NDA is to be brought in a court in the State of Delaware. *Id.* at 9; Decl. at ¶ 19.

On or about September 4, 2020, Cymulate advised Hardy that it was dissatisfied with his performance and was terminating his employment. Complaint ¶ 17; Decl. at ¶ 11.

On January 4, 2021, Plaintiff Wachsman received, on behalf of Cymulate, a letter from counsel for Defendant Hardy ("Demand Letter"). *See* **Exhibit B;** Decl. at ¶ 11. In the Demand Letter, Hardy claims to have "substantial legal claims against the Company, as well as [Wachsman] and/or Brian Stone in [their] individual capacities." Exhibit B at 1. In his Demand Letter, Hardy claims that Cymulate "never intended to honor its pre-employment representations and/or contractual obligations and instead sought only to 'milk' Hardy's 'lucrative contacts and business acumen.'" *Id*. at 4. Hardy claims that Stone "was jealous of" and "felt threatened by" him, engaging in employment misconduct that negatively affected Hardy's "brand and credibility." *Id*. at 3-4.

According to the Demand Letter, Hardy alleges to have claims including:

3

      a.      Breach of contract claims against the Company, including for the substantial equity monies owed to Mr. Hardy.

      b.      Fraud, negligent misrepresentation and related claims based upon the Company's false pre-employment representations to Mr. Hardy.

      c.      Fraud, negligent misrepresentation, unjust enrichment and related claims based upon the Company's, Wachsman and/or Mr. Stone's misconduct.

      d.      Breach of implied covenant of good-faith and fair dealing as to how the Company implemented Mr. Hardy's employment documents.

      e.      Tortious interference, conspiracy and other claims against Wachsman and/or Mr. Stone individually based upon your unreasonable actions, which were taken without justification or legitimate business purposes.

Exhibit B at 5.

Hardy claims in the Demand Letter, among other things:

      a.      If the Company had been acting lawfully and in good faith, Mr. Hardy could have expected to receive approximately $600,000 in total compensation (not including benefits) during the initial 18 months.

      b.      If the Company had been acting lawfully and in good-faith, Mr. Hardy could have expected to receive well over $1,000,000 from any liquidity event based upon his promised equity in the Company.

Exhibit B at 6.

Hardy is owed none of the payments or alleged damages above under the Employment Agreement or otherwise. None of Hardy's claims have merit. There is an actual controversy between Plaintiffs and Defendant regarding Defendant's asserted claims.

In addition to raising meritless claims against Plaintiffs, Hardy also denies that his claims are subject to arbitration:

> We are aware Paragraph 13 of Mr. Hardy's Employment Agreement states that pertinent disputes are to be resolved via arbitration. Even assuming Paragraph 13 is enforceable (which is, at best, questionable under applicable laws), any claims against [Wachsman] and/or Mr. Stone in [their] individual capacities will not be covered. Such claims will be brought in state court, where written discovery and depositions can occur shortly after the filing of a complaint.

Exhibit B at n. 4.  Counsel for Hardy has reiterated this point to both Cymulate's former and current counsel.  *See* **Exhibit C** ("Separate and apart from any arbitration, assuming there is no pre-litigation resolution, we intend to file a court lawsuit against Mr. Wachsman and Mr. Stone in their individual capacities.  The claims at issue will not be subject to the arbitration agreement, even if it is otherwise enforceable in whole or part.").

In the Demand Letter, Hardy also threatens to "contact appropriate current/former employees and other third-parties…."  Exhibit B at 4.  Hardy's counsel has reiterated this threat.  *See* Exhibit C ("As part of any lawsuit or arbitration proceeding, we intend to engage in substantial third-party discovery as appropriate….If necessary, we will begin reaching out to third parties as part of our continued due diligence efforts to further corroborate our position.").  Ignoring the binding and valid arbitration agreement, Hardy further threatens to file an action in state court, "where written discovery and depositions can occur shortly after the filing of a complaint." Exhibit B at n. 4.

### III.   ARGUMENT

**A. Legal Standards**

**1. Standard of Review to Obtain a Temporary Restraining Order.**

Federal Rule of Civil Procedure (Fed. R. Civ. P.) 65(b) sets forth the standard governing the issuance of a temporary restraining order.  A temporary restraining order shall be issued if:

> (1) it clearly appears from the specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Each of these criteria is satisfied in this case.

Numerous courts have determined the propriety of injunctive relief based upon the

submissions of briefs, affidavits and exhibits, without evidentiary hearing or oral argument. *See*, *e.g. Aoude v. Mobile Oil Corp.*, 862 F.2d 890 (1st Cir. 1988); Synthex *Opthalmics, Inc. v. Isuetaki*, 701 F.2d 677 (7th Cir. 1983). Plaintiffs' Complaint supports a finding that immediate and irreparable injury will result unless this Court issues a temporary restraining order.

### 2. Standard of Review to Obtain a Preliminary Injunction.

"TROs are ordinarily aimed at temporarily preserving the status quo." *Hope v. Warden York County Prison*, 956 F.3d 156, 160 (3d Cir. 2020). "A court may enter a preliminary injunction as a temporary measure to maintain the status quo until the court renders its ultimate decision on the merits." *Brennan v. William Paterson College*, 492 Fed.Appx. 258, 263 (3d Cir. 2012). "The purpose of a preliminary injunction is to preserve the status quo, not to decide the issues on their merits." *Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997). A plaintiff seeking a preliminary injunction must satisfy each of the following four factors: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 210 (3d Cir. 2014).

The United States Supreme Court has found that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981). "A party thus is not required to prove his case in full at a preliminary-injunction hearing." *Id*. As a result, "district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and remanded on other grounds*, 137 S. Ct. 1239 (2017). "A district court may grant a

6

preliminary injunction before determining whether a dispute requires judicial or arbitral action. Allowing courts to provide such relief permits the preservation of the status quo pending arbitration and, ipso facto, the meaningfulness of the arbitration process." *Cellinfo, LLC v. American Tower Corp.*, 352 F.Supp.3d 127, 135 (D.Mass. 2018).

Here, Plaintiffs can satisfy each of the required elements required for a preliminary injunction.

### B. Plaintiffs are Likely to Succeed on the Merits of Their Claims

A plaintiff is not required to prove an absolute legal right when seeking a preliminary injunction, instead, it need only establish a probable right. *Cipla Ltd. v. Amgen Inc.*, 778 Fed.Appx. 135, 138 (3d Cir. 2019) ("To establish a likelihood of success, a party must show 'a reasonable chance, or probability, of winning.'") (quoting *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015). Here, Plaintiffs can easily meet this burden with respect to its claims that any and all disputes between Hardy and Plaintiffs are subject to resolution through arbitration in Delaware, pursuant to the Employment Agreement.

#### 1. Plaintiff Cymulate is Likely to Succeed on its Declaratory Judgment Claim

The Federal Arbitration Act ("FAA") provides that a written agreement requiring arbitration of controversies arising out of "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has emphasized "the fundamental principle that arbitration is a matter of contract," and that "courts must place arbitration agreements on an equal footing with other contracts…and enforce them according to their terms." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 340, 131 S.Ct. 1740, 1746 (2011). The FAA mandates that district courts shall direct parties to proceed to arbitration on

7

issues for which arbitration has been agreed, and to stay proceedings while the arbitration is pending. *See* 9 U.S.C. §§ 3, 4; *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179-80 (3d Cir. 1999).

The FAA limits the role of courts to determine: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of the agreement. *John Hancock Mutual Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998). Public policy favors the enforcement of arbitration clauses if the parties validly entered into the agreement and the specific dispute falls within the scope of the clause. *BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 586 (D. Del. 2004). In determining whether the particular dispute falls within a valid arbitration agreement's scope, there is a presumption of arbitrability. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009). "Any doubts as to the scope of the arbitrable issues should be resolved in favor of arbitration…" *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 155 (3d Cir. 2000).

Hardy signed the Employment Agreement on June 7, 2020. The Employment Agreement is a binding and enforceable contract. The Employment Agreement provides that in the event of dispute between Hardy and Cymulate arising out of or related to his employment with Cymulate the dispute shall be settled through arbitration in the State of Delaware. Each and every claim alleged in the Demand Letter arises out of or is related to his employment with Cymulate. While Hardy vaguely questions the validity of the arbitration provision, he has made no argument that the Employment Agreement is not enforceable. **In fact, most of Hardy's alleged claims, including breach of contract, are dependent on the Employment Agreement being enforceable.**

Accordingly, as the Employment Agreement is a binding and enforceable contract, Plaintiff

is likely to succeed on the merits of its declaratory judgment action seeking enforcement of the arbitration provision of the Employment Agreement.

### 2. Plaintiffs Stone and Wachsman are Likely to Succeed on Their Declaratory Judgment Claims.

As discussed above, the Employment Agreement, including the arbitration provision, is binding and enforceable. Therefore, any and all claims related to Hardy's employment with Cymulate are subject to arbitration.

Hardy claims he is owed damages for various claims related to his employment with Cymulate and is threatening litigation against Plaintiffs Stone and Wachsman individually. Plaintiff Stone is Cymulate's CRO and was Hardy's direct supervisor. Plaintiff Wachsman is Cymulate's Chief Executive Officer and was involved in the decision to hire Hardy. Any and all actions taken by Plaintiffs Stone and Wachsman related to Hardy were taken solely as agents of Cymulate. Any and all actions taken by Plaintiffs Stone and Wachsman related to Hardy arose out of or were related to Hardy's employment with Cymulate. Therefore, any and all claims Hardy alleges to have against Plaintiffs Stone and Wachsman are subject to arbitration, pursuant to the Employment Agreement. *See Arrigo v. Blue Fish Commodities, Inc.*, 704 F.Supp.2d 299 (S.D.N.Y. 2010) (Former employee's claims against employer's chief executive officer were subject to employment agreement's arbitration provision, even though CEO was not a party to the agreement, where claims were based on CEO's status as employer's employee and agent.); *Collie v. Wehr Dissolution Corp.*, 345 F.Supp.2d 555 (M.D.N.C. 2004) (Individual defendants, majority owner of employer and its general manager, could invoke arbitration agreement between employer and employee in employee's wrongful termination and fraud action, even though they had not signed the agreement, based on their status as agents of employer and the conduct complained of occurred in individuals' official capacities with employer.).

Accordingly, as the Employment Agreement is a binding and enforceable contract and any and all actions taken by Plaintiffs Stone and Wachsman were taken solely as agents of Cymulate, Plaintiffs Stone and Wachsman are likely to succeed on the merits of their declaratory judgment action seeking enforcement of the arbitration provision of the Employment Agreement.

**C. Plaintiffs Will Suffer Irreparable Harm Absent the Requested Injunction.**

"Under principles of comity and federalism that restrain federal injunctions of state proceedings, the party seeking to enjoin state-court litigation must demonstrate that it has suffered or will suffer irreparable harm if denied equitable relief." *Seven Z enterprises, Inc. v. Giant Eagle, Inc.*, 379 F.Supp.3d 455, 460 (W.D.Pa. 2019) (citing *In re Davis*, 691 F.2d 176, 178 (3d Cir. 1982)). Here, Plaintiffs will suffer irreparable harm absent a temporary restraining order preventing Defendant from instituting a state court proceeding in South Carolina.

Under the South Carolina Rules of Civil Procedure, parties can begin discovery immediately upon filing an action. *See* Rule 26(d) (Rule 26(d) provides no starting point for discovery, unlike the similar rule under the Federal Rules of Civil Procedure that provides discovery cannot begin until the Rule 26(f) conference has been held). Hardy has already indicated, on multiple occasions, that he intends to engage in "substantial third-party discovery" and that such discovery "can occur shortly after the filing of a complaint. *See* Exhibit B and Exhibit C. Accordingly, if Defendant is permitted to institute a state court proceeding, it is clear that he will immediately engage in discovery, including, but not limited to, intentionally harassing third-party discovery.

This third-party discovery is likely to include discovery directed at both Cymulate's competitors (Exhibit C ("[W]e intend to contact AttackIQ.")) and Cymulate's clients. Cymulate would be required to aggressively object to such discovery, while also seeking to rightfully compel

10

arbitration.  Further, there is no way to determine with any certainty the damage, including the loss reputation and loss of goodwill that would be caused by Hardy contacting Cymulate's competitors and clients.  Once that genie is out of the bottle, there is no curing the damage done to Cymulate's reputation.

It is clear from discussions with Hardy's counsel, that any state court action would be for the sole purpose of gaining leverage against Cymulate in an attempt to force a settlement of claims that have no merit.  If Hardy is permitted to institute such a state court action, Cymulate would be forced to expend substantial time and money to enforce the Employment Agreement and compel arbitration in Delaware.

Thus, Plaintiffs have demonstrated that, without injunctive relief, they are likely to suffer irreparable harm.

### D.  The Balance of Equities Supports the Requested Injunction.

In this case, Hardy will not suffer any harm from the requested injunction. Instead, the harm to Plaintiffs if the Court does not enjoin Hardy from instituting a frivolous state court action in South Carolina is significant. In no way do Plaintiffs seek to prevent Hardy from pursuing a resolution of any claims he may have against Plaintiffs.  Rather, Plaintiffs simply demand that Hardy comply with the terms of the Employment Agreement.  Accordingly, there is no potential harm to Defendant. Defendant would only be prevented from instituting a state court proceeding, whereas, Plaintiffs face the loss of the benefit of their bargain, as well as the loss of customer goodwill, business, and reputation, for which there is no adequate remedy at law.

### E.  <u>Granting Injunctive Relief is in the Public Interest.</u>

The public will suffer no harm if Defendant is made to abide by the Employment Agreement.  Rather, the public interest will be served by enjoining Defendant from instituting a

11

state court action regarding claims that are subject to arbitration because it will preserve judicial resources. Further, it is certainly not in the public interest to permit a party to a contract to willfully and deliberately breach its terms as Hardy threatens to do by instituting a state court action. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535 (6th Cir. 2007); *Fruit of the Loom v. Zumwalt*, 2015 WL 7779524, at *5 (W.D. Ky., Dec. 1, 2015) ("No public policies appear to be implicated by the issuance of the preliminary injunction in this case other than the general public interest in the enforcement of voluntarily assumed contract obligation.").

### F. The Anti-Injunction Act

The Court is not restrained from enjoining Defendant from instituting a state court action by the Anti-Injunction Act. "Section 2283 does not prohibit the issuance of such an injunction, since that statute applies to injunctions against Pending state court proceedings rather than against those which may be brought in the future or are only threatened." *Albright v. R. J. Reynolds Tobacco Co.*, 464 F.Supp. 1220, 1229 (W.D.Pa. 1979) (citing *Walter E. Heller & Co., Inc. v. Cox*, 379 F.Supp. 299, 307 (S.D.N.Y. 1974)). "The Anti-Injunction Act does not preclude injunctions against the institution of state court proceedings, but only bars stays of suits already instituted." *In re Diet Drugs*, 282 F.3d 220, n.10 (3rd Cir. 2002). This point applies here with particular force, as Plaintiffs are facing the very real danger that Defendant immediately files in state court and immediately invokes the Anti-Injunction Act. Accordingly, providing prior notice to Defendant and Defendant's counsel will certainly defeat the purpose of the relief Plaintiffs are now seeking. Plaintiffs believe that Defendant is already racing towards the state court filing for this very reason and to ultimately try to circumvent and otherwise avoid a valid and enforceable arbitration agreement in the state of Delaware. *See* **Exhibit D** (Letter from Plaintiffs requesting an expedited hearing).

## IV. CONCLUSION

Based on the foregoing and Plaintiffs' Complaint, Plaintiffs respectfully move this Court for an order granting the following relief:

A. The entry of a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Defendant Hardy from instituting a state court action against Plaintiffs involving any claims related to his employment with Cymulate.

B. Defendant Hardy taxed with Plaintiffs' costs of bringing this action.

C. An award of such other relief as this Honorable Court deems just and proper.

This 24th day of February, 2021.

                                                Respectfully submitted,

                                                */s/ Chad Flores*
                                                Chad Flores (DE. Id No. 5709)
                                                **FISHER PHILLIPS LLP**
                                                Two Logan Square, 12th Floor
                                                100 N. 18th Street
                                                Philadelphia, Pennsylvania 19103
                                                Telephone: (610) 230-2150
                                                Facsimile: (610) 230-2151
                                                Email: cflores@fisherphillips.com
                                                *ATTORNEY FOR PLAINTIFFS*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System; I further certify that a true and correct copy of the foregoing was served, via Federal Express, next day delivery, upon the following:

Mr. Ryan Hardy
106 Monteray Oaks Cir.
Fort Mill, South Carolina 29715

*/s/ Chad Flores*
COUNSEL FOR PLAINTIFFS

14

FP 39887146.1